**CELLULAR TELEPHONE COMPANY, doing business as AT & T Wireless Services, Plaintiff–Appellee,**

v.

**The TOWN OF OYSTER BAY and The Town Board of the Town of Oyster Bay, Defendants–Appellants.**

Docket No. 98–9009

United States Court of Appeals, Second Circuit.

Argued Jan. 4, 1999.

Decided Jan. 29, 1999.

Perry S. Reich, Lindenhurst, N.Y. (Schapiro & Reich, Steven M. Schapiro, of Counsel), for Defendants–Appellants.

Robert D. Kaplan, New York, N.Y. (Friedman Kaplan & Seiler LLP, Nicole L. Guéron, of Counsel), for Plaintiff–Appellee.

Before: FEINBERG, PARKER and SACK, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Town of Oyster Bay (Town) and defendant Town Board of the Town (Town Board) appeal from a judgment of the United States District Court for the Eastern District of New York, Joanna Seybert, J., granting the motion for summary judgment of plaintiff Cellular Telephone Company d/b/a AT & T Wireless Services (AT & T) and entering an injunction against the Town. The district court found that the Town's denials of two special permits were not based on substantial evidence under the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(TCA), and ordered issuance of the permits. *Cellular Telephone Co. v. Town of Oyster Bay*, No. 97–CV–641 (E.D.N.Y. June 17, 1998). For the reasons set forth below, we affirm.

## I. Background

AT & T is a provider of cellular telephone service across Long Island. As a licensee of the New York State Public Service Commission, AT & T is obligated to provide reliable wireless communications service throughout the New York metropolitan area. To achieve this goal, AT & T needs to create a network of individual "cell sites," which consist of radio antennae and related equipment that send and receive radio signals to and from customers' cellular phones. The signals are low power, high frequency radio waves, necessitating rather short distances between cell sites. In urban areas, analog cell sites must be within a few miles of one another. Additionally, the cell sites need to be sufficiently high to allow the antennae to successfully transmit and receive the radio signals. Height requirements vary due to local topography, but usually fall in the range of 80'–150' above ground level.

Since each site can process only a limited number of calls at any one time, additional cell sites must be added as cellular service usage increases. If a network contains too few cell sites or sites too far apart from one another, customers living or working in or traveling through these "coverage gaps" experience inadequate service, including static, inability to place calls and mid-call disconnection. At some point prior to 1995, AT & T identified two such coverage gaps within the Town of Oyster Bay—one in Glen Head and one in South Farmingdale. AT & T sought to remedy these gaps by placing two new cell sites in the Town.

AT & T identified existing structures, two water towers, that could serve as the base mounts for the cellular antennae, eliminating the need to construct a monopole or latticed tower to meet cell site height requirements. AT & T privately contracted with the owners of the water towers for the right to install the cell sites. In May 1995, AT & T applied to the Division of Building of the Oyster Bay Department of Planning and Development for a building permit for the Glen Head site. A similar application was filed in January 1996 for the Farmingdale site. Both applications were rejected, necessitating petitions to the Town Board for special use permits. AT & T filed the Glen Head petition in September 1995 and the Farmingdale petition in March 1996.

The Town Board held public hearings on each of the petitions, for the Glen Head site in February 1996 and for the Farmingdale site in January 1997. At each hearing AT & T presented evidence as to the need for the cell site to assure uninterrupted coverage of the area. AT & T also presented evidence suggesting that the cell sites would not adversely affect the character of the neighborhood or the real estate value of nearby property. Finally, AT & T presented scientific evidence on radio frequency emissions (rfes), intended to allay residents' fears of adverse health effects from the sites.

The Town did not present evidence at either hearing. Instead, at each hearing, the floor was opened to the public to speak for or against the petitions. In both cases, the only speakers were those opposed to granting the petitions. Of the comments, the vast majority were addressed to the perceived health threat that the sites might pose. Specifically, the residents of Oyster Bay expressed concern that the rfes emitted by the cell sites might cause cancer. At the Glen Head hearing a petition was introduced into evidence bearing 640 signatures, all from residents opposed to the cell sites because of concern over potential health risks. Occasional remarks were made as to the effect of the sites on property values and/or the aesthetics of the community. However, health concerns dominated the speakers' statements at each hearing.

In February and May of 1997, the Town Board by resolution denied the Glen Head and Farmingdale petitions, respectively. In addition to citing "safety issues" as a ground for each denial, the resolutions also listed, among other things, the failure to provide parking, the need for a full environmental impact statement, the need to address traffic, air quality and noise issues, and aesthetic concerns as reasons for denying the petitions. In response, AT & T filed the instant action in the district court, alleging that the denials violated the TCA. AT & T moved for summary judgment in September 1997. In a thorough opinion filed in June 1998, the district court granted AT & T's motion for summary judgment, holding that the Town had violated the TCA and ordering the Town to issue all necessary permits and licenses to AT & T so that it could construct the two cell sites. The Town appeals that decision.

## II. The Governing Law

### A. Standard of Review

■ On a motion for summary judgment, this Court reviews the district court's determination de novo, *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998), and reviews facts in the light most favorable to the losing party. *Sullivan v. Town of Salem*, 805 F.2d 81, 82–83 (2d Cir.1986).

### B. The Telecommunications Act of 1996

The TCA is an omnibus overhaul of the federal regulation of communications compa-

nies. The TCA was intended, in the words of the Conference Committee:

> to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services . . . by opening all telecommunications markets to competition. . . .

H.R. Conf. Rep. No. 104–458, at 206 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124. In furtherance of this goal, Congress added a subsection to the National Wireless Telecommunications Siting Policy, 47 U.S.C. § 332(c), which provides as follows:

(7) Preservation of local zoning authority

(A) General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.[1]

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

■ Traditionally, the federal courts have taken an extremely deferential stance in reviewing local zoning decisions, limiting the scope of inquiry to the constitutionality of the zoning decision under a standard of rational review. See, e.g., *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). Although Congress explicitly preserved local zoning authority in all other respects over the siting of wireless facilities, § 332(c)(7)(A), the method by which siting decisions are made is now subject to judicial oversight. § 332(c)(7)(B)(v). Therefore, denials subject to the TCA are reviewed by this court more closely than standard local zoning decisions. Here, the issue is whether the denials were supported by substantial evidence.

C. Substantial Evidence

■ The TCA requires that denials be supported by substantial evidence. See 47

1. All references in the statute to "the Commission" are to the Federal Communications Commission (the "FCC").

U.S.C. § 332(c)(7)(B)(iii). In determining whether the denial was supported by substantial evidence, we must employ "the traditional standard used for judicial review of agency actions." H.R. Conf. No. 104–458, at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 223. This standard of review is deferential, and we may neither engage in our own fact-finding nor supplant the Town Board's reasonable determinations. *PrimeCo Personal Communications, L.P. v. Village of Fox Lake*, 26 F.Supp.2d 1052, 1063 (N.D.Ill. 1998). Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (internal quotations omitted). However, the record should be viewed in its entirety, including evidence opposed to the Town's view. *American Textile Mfr. Inst., Inc. v. Donovan*, 452 U.S. 490, 523, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981).

■ When evaluating the evidence, local and state zoning laws govern the weight to be given the evidence. The TCA clearly establishes procedural requirements that local boards must comply with in evaluating cell site applications. And it has been observed that the TCA does not "affect or encroach upon the substantive standards to be applied under established principles of state and local law." *Cellular Telephone Co. v. Zoning Bd. of Adjustment*, 24 F.Supp.2d 359, 366 (D.N.J.1998) (internal quotations omitted).[2]

■ In *New York*, cellular telephone companies are afforded the status of public utilities. *Cellular Telephone Co. v. Rosenberg*, 82 N.Y.2d 364, 371, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993). As such, a cellular

telephone company's application for a variance must be judged by the Town Board on a different standard than that applied to the usual application for a use variance. See *Consolidated Edison Co. v. Hoffman*, 43 N.Y.2d 598, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978). Rather than granting a variance only on a showing of "unnecessary hardship," a local zoning board must consider whether the public utility has shown "a need for its facilities" and whether the needs of the broader public would be served by granting the variance. *Id.* at 608–10, 403 N.Y.S.2d 193, 374 N.E.2d 105. However, aesthetic concerns can be a valid basis for zoning decisions. See *Suffolk Outdoor Advertising Co. v. Hulse*, 43 N.Y.2d 483, 490, 402 N.Y.S.2d 368, 373 N.E.2d 263 (1977) (holding that ordinances banning billboards were constitutional, as "aesthetics constitutes a valid basis for the exercise of the police power").

## III. Discussion

Before we begin the analysis, we note that this statute fairly bristles with potential issues, from the proper allocation of the burden of proof through the available remedies for violation of the statute's requirements. As will be seen below, however, this appeal does not require a resolution of many of the questions raised by § 332(c)(7).

## A. Substantial Evidence

■ AT & T argues that the permit denials violated the TCA because neither was supported by substantial evidence. The Town acknowledges that the health concerns[3] expressed by residents cannot constitute substantial evidence. 47 U.S.C. § 332(c)(7)(B)(iv) ("No ... local government ... may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environ-

---

**2.** We note, however, that § 332(c)(7)(B)(iv) bars denials based on environmental effects of rfes, if the applicant facility would comply with FCC standards, an undisputed issue in this case. The provision appears to impose a "substantive" standard.

**3.** The statute uses the term "environmental effects" to describe an impermissible basis for decision. Although one court has questioned

whether "environmental effects" and "health concerns" are the same, see *Iowa Wireless Servs., L.P. v. City of Moline, Illinois*, 29 F.Supp.2d 915, 924 (C.D.Ill.1998), we believe that the terms are interchangeable and will use "health concerns" to refer to the constituent testimony on the connection between rfes and cancer and other health problems.

mental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.") See *Illinois RSA No. 3, Inc. v. County of Peoria*, 963 F.Supp. 732, 745 (C.D.Ill.1997)(holding that the generalized health concerns of citizens are insufficient to rise to the level of substantial evidence). See also *AT & T Wireless PCS, Inc. v. City Council*, 155 F.3d 423, 431 n. 6 (4th Cir.1998) (noting that TCA precludes "health concerns from radio emissions"). However, the Town argues that the aesthetic and property value concerns expressed by citizens were sufficient to satisfy the substantial evidence standard.

We look at the record as a whole to see whether or not there is substantial evidence that the permits were denied on permissible grounds. See *American Textile*, 452 U.S. at 523, 101 S.Ct. 2478. A review of the record before us of the two hearings reveals that the bulk of the testimony addressed citizens' fears of adverse health effects from the cell sites. It is true that raising such concerns does not violate the TCA, see *Smart SMR v. Zoning Comm'n*, 995 F.Supp. 52, 58 (D.Conn. 1998) (pointing out that locality does not violate the TCA by "merely inquiring into the safety of emissions from a wireless facility"). But when the testimony is almost exclusively directed to health effects, there must be substantial evidence of some legitimate reason for rejecting the applications to avoid the conclusion that the denials were based on the impermissible health effects ground. See *Iowa Wireless Servs., L.P. v. City of Moline, Illinois*, 29 F.Supp.2d 915, 923 (C.D.Ill.1998) (holding that TCA § 332(c)(7)(B)(iv) "prevents the denial of a permit *on the sole basis* that the facility would cause negative environmental effects") (emphasis added). We therefore turn to the aesthetic and property value concerns expressed by citizens to determine whether the Board possessed substantial evidence on one or both of these grounds that could provide a legitimate basis for these denials.

### 1. Aesthetics

In *New York*, aesthetics can be a valid ground for local zoning decisions. See *Suffolk Outdoor Advertising*, 43 N.Y.2d at 490, 402 N.Y.S.2d 368, 373 N.E.2d 263. Normally, we would not look far beyond the Town's citing of aesthetics to find a valid basis for a local zoning decision. However, under the TCA, we can find that aesthetics qualify as a permissible ground for denial of a permit only if we can conclude that there was "more that a mere scintilla" of evidence, *Universal Camera*, 340 U.S. at 477, 71 S.Ct. 456, before the Board on the negative visual impact of the cell sites.[4]

Very few residents expressed aesthetic concerns at the hearings, and those who did express them did not articulate specifically how the proposed cell sites would have an adverse aesthetic impact on the community. In fact, a few comments suggested that the residents who expressed aesthetic concerns did not understand what the proposed cell sites would actually look like, see A–293–94 (objecting to "a mass of spaghetti of wires"); A–303 (suggesting that antennae would project from the top of the water tank like "a small birthday cake with candles"). AT & T proposed mounting the antennae on the catwalk of the water towers and painting the antennae the same color as the towers. It is not clear if residents will be able even to see the antennae, let alone experience a negative visual impact on the community.

Courts have split as to the weight to be afforded to constituent testimony on aesthetics, compare *Omnipoint Corp. v. Zoning Hearing Bd.*, 20 F.Supp.2d 875, 880 (E.D.Pa. 1998) (holding that "unsubstantiated personal opinions" expressing "generalized concerns ... about aesthetic and visual impacts on the neighborhood do not amount to substantial evidence") with *AT & T Wireless PCS*, 155 F.3d at 430 (holding that constituent aesthetic concerns could constitute "compelling" evidence for City Council). Even if we were to adopt the Fourth Circuit's more deferential standard toward the evidentiary value of con-

---

**4.** We note that AT & T argues that aesthetic concerns cannot be substantial evidence to support the denials in this case because aesthetics was not raised before the district court as a basis justifying the Town Board's decisions. We need not decide this issue since we find that the evidence on aesthetics was not sufficient to justify the denials.

stituent comment, on which we take no position, the volume and specificity of the comments in the proceedings here do not reach even the low threshhold set by that decision. See *id.* Therefore, we find that the few generalized expressions of concern with "aesthetics" cannot serve as substantial evidence on which the Town could base the denials.

### 2. Property values

The Town argues that citizen concerns with the impact on property values were adequate to satisfy the substantial evidence test. The Town points out that a number of residents expressed concern that the presence of nearby cell sites would decrease the values of their homes. Further, at one of the hearings, a real estate broker submitted an affidavit stating that the presence of cell sites would depress real estate values of nearby property in a manner similar to the drop in value caused by the presence of high tension power lines. However, the broker offered no evidence other than her unsupported affidavit to prove how she reached this conclusion. AT & T in return presented the report of a real estate appraiser who found that water tower-based cell sites in other towns on Long Island had no impact on the value of nearby homes.

The evaluation of property value evidence under the TCA raises some difficult questions. In addition to the uncertain weight to be afforded to citizens' views, this argument raises the issue of how to weigh residents' unsupported expressions of concern against a proffer of expert testimony. See *PrimeCo,* 26 F.Supp.2d at 1063 (holding that, in the face of expert testimony evidence, unsupported constituent testimony in opposition to a cellular tower permit will not satisfy the substantial evidence test); *Cellular Telephone Co.,* 24 F.Supp.2d at 372 (holding that "essentially non-expert testimony presented by local residents with possible biases . . . is not enough to discredit the testimony of qualified experts"). Further, since property values can be objectively proven, it is not clear if the Town must receive traditional evidence that would tend to demonstrate that cell sites have a negative impact on property values in order to satisfy the substantial evidence test. See *Sprint Spectrum L.P. v. Town of North Stonington,* 12 F.Supp.2d 247, 254 (D.Conn. 1998) (holding that in order for the Town Planning & Zoning Commission to deny a permit application based on property values, the Town bore the burden of putting evidence into the record tending to show such a negative impact).

Further, reliance on concerns about loss of value itself raises a question in this context. AT & T suggests that citizens' property value concerns were a result of their fear of rfe-related health effects, and a review of the record lends strong support to this view. AT & T therefore argues that the TCA bars reliance on fear of declining property values because this rationale is actually a proxy for the impermissible ground of environmental effects. Neither federal TCA case law nor New York property case law offer a clear resolution of this issue.

However, we need not resolve these troubling questions, as we again conclude that the volume and specificity of the comments were not adequate to satisfy the requirement of the substantial evidence standard. See *Iowa Wireless,* 29 F.Supp.2d at 922 (finding that "concerns of citizens regarding potential aesthetic or economic effects may amount to 'substantial' evidence in some circumstances" but holding that in that case public concern was too limited to satisfy the substantial evidence standard). A few generalized concerns about a potential decrease in property values, especially in light of AT & T's contradictory expert testimony, does not seem "adequate to support a conclusion," *Universal Camera,* 340 U.S. at 477, 71 S.Ct. 456, that the permits should be denied.

### B.  Burden of Proof

Finally, we note that the Town argues that the district court erroneously placed the burden on the Town to prove that its decision was supported by substantial evidence. It is not clear whether the Town bears this burden, see *PrimeCo,* 26 F.Supp.2d at 1064 (placing burden on locality to prove denial supported by substantial evidence); *Cellco Partnership v. Town Plan & Zoning Comm'n,* 3 F.Supp.2d 178, 182 (D.Conn.1998)

(same); *Smart SMR*, 995 F.Supp. at 56 (same); *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 49 (D.Mass.1997) (same); or whether the permit applicant has to prove that the locality's decision was not supported by substantial evidence, see *Cellular Telephone*, 24 F.Supp.2d at 366 ("[T]he Board's decision is afforded deference with the burden on plaintiffs to overturn that decision. . . ."); *Century Cellunet v. City of Ferrysburg*, 993 F.Supp. 1072, 1077 (W.D.Mich.1997) (same). In this case, it is unnecessary for us to decide the issue of allocation of the burden of proof. Either way, we find that AT & T would prevail. Therefore, we leave resolution of that issue for another day.

In conclusion, a review of the record leads us to agree with the district count that the denials were not supported by substantial evidence. Aside from health effects testimony, there simply was not enough evidence of any kind for it to rise to the level of "substantial." We therefore hold that the Town violated the TCA by denying the permits to build the cell sites.

## C. Remedy

█ The Town argues that even if the denials violated the TCA, the district court improperly remedied the violations by granting AT & T an injunction and ordering the Town to issue "the special permits and any other permits or licenses necessary to construct and operate the proposed communications facility." *Cellular Telephone Serv.*, No. 97–CV–641 at 16. The Town argues that the district court should have remanded the permit applications back to the Town for compliance with remaining local procedure. For example, even if the Town Board approved the special permits request, AT & T still would have been required to submit a site plan to the Town's Planning Board for review. The Town also argues that the order was inappropriate because the responsibility to issue building permits belongs to the Building Department, which is not a named defendant in this action.

The TCA does not specify a remedy for violations of the cellular siting subsection. See 47 U.S.C. § 332(c)(7)(B)(v) (granting jurisdiction for review of any final action that is inconsistent with the TCA and simply directing the court to "hear and decide such action[s] on an expedited basis"). However, the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits. See, e.g., *Iowa Wireless Servs.*, 29 F.Supp.2d 915, 924 (ordering defendant to grant plaintiff a special use permit "with all deliberate speed"); *Omnipoint Corp.*, 20 F.Supp.2d at 881–82 (ordering zoning board to issue requested special exception permit and declining to remand because to do so would "frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis"); *Illinois RSA No. 3*, 963 F.Supp. at 747 (concluding that injunction directing defendant to issue permit is appropriate relief under TCA); *BellSouth Mobility Inc. v. Gwinnett County, Georgia*, 944 F.Supp. 923, 929 (N.D.Ga.1996) (granting plaintiffs' request for writ of mandamus and ordering defendant to grant plaintiffs' requested permit). But see *PrimeCo*, 26 F.Supp.2d at 1066–67 (declining plaintiff's request for a writ of mandamus and remanding case to Village Board of Trustees for additional proceedings in accordance with the opinion); *AT & T v. Orange County*, 982 F.Supp. 856, 860–62 (M.D.Fla.1997) (declining AT & T's request for injunctive relief in deference to local authority and remanding to Board for further proceedings).

Given the weight of authority that injunctive relief best serves the TCA's stated goal of expediting resolution of this type of action, see 47 U.S.C. § 332(c)(7)(B)(v), and our agreement with the district court that remand would serve no useful purpose in this case, see *Cellular Telephone Serv.*, No. 97–CV–641 at 15, we hold that an injunction ordering the Town to issue the permits was an appropriate remedy.

### Conclusion

We have considered all of appellants' arguments for reversal or remand and find them unpersuasive on this record. The judgment of the district court is affirmed.