AIRTOUCH CELLULAR, a California corporation, Plaintiff,

v.

The CITY OF EL CAJON and The City Council of the City of El Cajon, Defendants.

No. Civ. 99–1801–B LAB.

United States District Court, S.D. California.

Feb. 10, 2000.

Kimberly A. McDonnell, San Diego, CA, for plaintiff.

Lynn R. McDougal, El Cajon, CA, for defendant.

## ORDER

BREWSTER, Senior District Judge.

**(1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR FOR SUMMARY ADJUDICATION**

**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: FIRST AND SIXTH CLAIMS FOR RELIEF**

### I. Introduction

Before the Court are two motions: (1) Plaintiff's Motion for Summary Judgment re: First and Sixth Claims for Relief, and (2) Defendants' Motion for Summary Judgment and/or Summary Adjudication of Issues.

### II. Background

The zoning ordinances of the City of El Cajon (hereinafter "City") permit cellular antennas in any zone provided a conditional use permit is granted. (Plaintiff's Request for Judicial Notice ("RJN"), Ex. D, El Cajon Zoning Ordinance § 17.60.040(Y).) On December 21, 1998, Plaintiff AirTouch Cellular ("AirTouch" or "Plaintiff") filed with the City Application No. 1773 for a conditional use permit ("CUP") to construct and maintain wireless communication facilities on top of and adjacent to a water tower owned by the Padre Dam Municipal Water District. (Administrative Record ("AR"), Ex. 57.) The water tower is in the Fletcher Hills area of the City in an "R–S–9–H" (Residential Suburban, 9000 sq. ft.) zone. (AR at Ex. 47, 499.) AirTouch sought to build an unmanned facility with: (1) 30 antennas ranging in size from "1'x2'x4'" (*id.* at 501) (the Court takes this to mean these 30 antennas range in size from 1 foot to 4 feet); (2) six omni-directional antennas ranging in height from two feet to six feet; (3) two dish antennas ranging in size from three feet to seven feet in diameter; and (4) a 12 feet by 30 feet (360 square feet)

equipment building. (*Id.* at 501.) Six existing antennas installed by Nextel Communications, a competitor of AirTouch, were already on the site. (*Id.*) There was also a 200 square foot Nextel equipment room on the property at the time of AirTouch's application. (*Id.* at 500.)

In El Cajon, a conditional use permit may be granted by the Planning Commission ("PC") (RJN, Ex. D, § 17.70.040(A)), which must thereafter adopt a resolution stating the facts and findings supporting its decision. (*Id.* at § 17.70.070.) Accordingly, the Director of Community Redevelopment set AirTouch's application for a CUP for public hearing before the PC on February 22, 1999. (AR, Ex. 53 & 55.) Prior to the hearing, the PC was sent a number of letters from residents near the site objecting to the CUP on grounds including visual blight, safety, lowering of market value for properties near the site, noise, traffic of workers on site, and privacy. (AR, Ex. 50.) Also, PC Staff prepared for the February 22 meeting a Staff Report and Recommendation ("Staff R & R"). (AR, Ex. 47.) That report recommended that the PC grant CUP 1773 subject to conditions such as color of antennas and equipment, size of air conditioning unit, and lighting on property. (*Id.* at 505–06.) It also found that the visual impact would be "minimal," [1] that regarding electromagnetic fields and radio frequency radiation, the City could do no more than require AirTouch to comply with Federal health and safety standards, and that nothing had been discovered to suggest the project would be incompatible with surrounding areas. (*Id.* at 503.) The Staff report also indicated that it had received four telephone calls objecting to the project. (*Id.* at 504.)

At the February 22 hearing, several residents voiced concerns similar to those mentioned above in residents' letters. (AR, Ex. 49.) Many of the concerns were

---

**1.** The Staff report notes that the water tank is 110 feet away from the closest single family residence, that the proposed equipment build-

ing is 135 feet away and that the closest antenna would be 120 feet away. (AR, Ex. 47 at 503.)

related to problems residents had experienced with Nextel's communication facility, including noise of the air conditioner, noise and other nuisances from workmen, loss of privacy, and landscaping. (*Id.*) An Air-Touch representative, Kathy Wagner, testified that AirTouch had looked into two alternative sites. (*Id.* at 585.) One possibility was "declined" because it would involve "a very difficult construction" involving trenching cables under an existing road. (*Id.*) Another option was rejected because it would provide less coverage than the Fletcher Hills site. (*Id.*) Wagner also attempted to address some of the concerns of the area residents. (*Id.*) The PC ended the hearing by voting for a continuance of the meeting until March 1. At the March 1 hearing, the matter was further continued to April 5, 1999. (AR, Ex. 48.)

On March 28, 1999, two homeowners mailed to the PC a petition signed by 212 residents of Fletcher Hills objecting to AirTouch's application. (AR, Ex. 44.)

At the April 5 hearing, residents of Fletcher Hills again spoke in opposition to CUP 1773.(Id.) Wagner again testified. (*Id.* at 130, 135.) She stated that Air-Touch had offered a landscaping and/or fencing allowance to neighbors and stated that construction of the project would probably last eight weeks. (*Id.* at 131, 135.) In addition, the PC Staff prepared another Staff Report dated April 5, 1999, which again recommended approval of Air-Touch's application. (AR, Ex. 21.)

On April 19, 1999, there were further proceedings before the PC regarding CUP 1773. (AR, Ex. 20.) The PC voted to approve CUP 1773 and adopt Resolution No. 9263. (*Id.* at 106; AR, Ex. 41 at 456.) Resolution 9263 adopted the PC Staff report, and AirTouch's application was granted subject to the restrictions/conditions recommended by the report. (AR, Ex. 41.) The decision of the PC granting or denying a permit is final and conclusive unless a written request for review is filed by a member of the City Council (including the Mayor). (*Id.* at 17.70.090.) In case of such a request, the CUP is stayed pending a hearing. (*Id.*)

On April 25, 1999, Mayor Mark Lewis sent a letter to the City Clerk timely requesting a review of PC Resolution No. 9263 granting CUP 1773. (AR, Ex. 14.) Pursuant to the City's zoning ordinances, the PC's entire file was forwarded to the City Council. (RJN, Ex. D, § 17.70.100; *see also* AR, Ex. 4.) After a public hearing, the City Council must approve, modify or disapprove of the PC's decision by adopting a resolution within forty days of the hearing. (RJN, Ex. D, §§ 17.70.090 & 17.70.110–30.) The resolution must state findings supporting its decision. (*Id.* at § 17.70.130.) The resolutiony must be mailed to the interested parties within ten days of the adoption of the resolution. (*Id.* at § 17.70.150.)

In this case, a public hearing before the City Council was set for May 25, 1999. (AR, Ex. 10.) When the May 25 meeting was opened for public comment, a spokesperson for the Fletcher Hills Highlands Homeowner's Association spoke first, again raising issues including visual blight, noise problem, traffic of workmen, health concerns regarding electromagnetic fields and radio frequency radiation, and diminished property values. (*Id.* at 11–15.) Two other homeowners then spoke, raising similar concerns. (*Id.* at 16–21.)

Next, Wagner spoke on AirTouch's behalf, discussing alternative sites which had been considered but were rejected for various reasons. (*Id.* at 22–24.) A senior engineer for AirTouch then addressed electromagnetic emissions, noise abatement, and the availability of other sites. (*Id.* at 24–28.) Another AirTouch employee followed. (*Id.* at 29–30.) A number of area photographs were part of the record and analyzed by the City Council.

After some brief further comments by various person, the City Council voted to disapprove PC Resolution 9263 which had granted CUP 1773. (*Id.* at 32.) The City Council voted to adopt Resolution 77–99, which denied CUP 1773 on seven grounds,

summarized here: (1) there is already an existing wireless communication facility on the water tank requiring periodic maintenance and repairs; (2) the PC had expressed concern that there might be an "over-intensification" of wireless communication facilities in one location and the property is surrounded by single family homes which are "inconsistent with wireless communication facilities absent appropriate conditions;" (3) it is preferable to locate wireless communications facilities in commercial zones whenever possible; (4) CUP 1773 would increase the number of antennae on the site seven-fold and double the number of equipment building facilities; (5) additional wireless communications facilities would cause "over-intensification" of such facilities and challenge the "integrity" of the neighborhood, "especially where alternative sites for such facilities should be available," and the detriment and additional expenses to be suffered by AirTouch is "far outweighed by the avoidance of the visual and aesthetic impacts" to the neighborhood; (6) additional wireless communication facilities would adversely affect the property values of surrounding residences, and potentially cause problems including increased noise, a change in the "natural aesthetics," create obtrusive visual impacts, and safety and security problems; (7) any discrimination between Nextel and AirTouch is reasonable under the circumstances given the fact that AirTouch is not being denied the opportunity to locate facilities on alternative sites. (AR, Ex. 5, 39–41.)

On August 6, 1999, counsel for the city mailed AirTouch and its attorneys a copy of Resolution No. 77–99. (*Id.* at 38.) Generally, under the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) (Supp. III 1997) (the "Act" or the "Telecommunications Act"), a person adversely affected by a final action of a state or local government may file an action in "any court of competent jurisdiction" within thirty days of the final action. 47 U.S.C. § 332(c)(7)(B)(v) (Supp. III 1997). However, the City's letter confirmed a tolling agreement between the parties that Air-

Touch would have thirty-five days from the date of the correspondence to file an action in federal court. (*Id.*) On August 26, 1999, AirTouch timely filed the instant action in the United States District Court for the Southern District of California. Plaintiff's complaint sets forth eight claims for relief: (1) Telecommunications Act of 1996; (2) Communications Act of 1934; (3) preemption by the Communications Act of 1934 and the FCC Regulatory Scheme; (4) unconstitutional denial of substantive due process and equal protection; (5) taking of private property without payment of just compensation; (6) violation of the Civil Rights Act, 42 U.S.C. § 1983 *et seq.;* (7) administrative mandamus under California Code of Civil Procedure § 1094.5; and (8) declaratory relief.

AirTouch filed its Motion for Summary Judgment re: First and Sixth Claims for Relief ("Plaintiff's Motion") on December 27, 1999. Defendants filed their Motion for Summary Judgment or in the Alternative Summary Adjudication ("Defendants' Motion") on December 23, 1999.

### III. Burden of Proof

### A. Summary Judgment Generally

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment must be granted if the party responding to the motion fails

"to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The evidence offered need not be in a form admissible at trial to avoid summary judgment. *Id.* at 324, 106 S.Ct. 2548. When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548.

If a court is unable to render summary judgment upon an entire case and finds that a trial is necessary, it shall if practicable grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate. *See* Fed.R.Civ.P. 56(d); *see also California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998); *cert. denied*, 525 U.S. 822, 119 S.Ct. 64, 142 L.Ed.2d 51 (1998).

### B. Substantial Evidence Standard

In this motion, the Court is called upon to determine whether the City Council's denial of CUP 1773 was "supported by substantial evidence." *See* 47 U.S.C. § 332(c)(7)(B)(iii) (Supp. III 1997). The standard of law and burden of proof on this claim is discussed below in section IV.B.1.

### IV. First Claim for Relief: The Telecommunications Act of 1996

### A. Background

The Telecommunications Act was an "overhaul of the federal regulation of communications companies." *Cellular Tel. Co. v. Oyster Bay*, 166 F.3d 490, 492–93 (2d Cir.1999). It was designed:

to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced technologies and services ... by opening all telecommunications markets to competition....

*Id.* at 493 (quoting H.R.Conf.Rep. No. 104–458, at 206 (1996)). The Act was intended to promote competition by limiting the ability of local authorities to regulate and control the expansion of telecommunications technologies. *Omnipoint Communications, Inc. v. Scranton*, 36 F.Supp.2d 222, 227 (M.D.Pa.1999). For example, under the Act, courts review telecommunication zoning denials more closely than standard zoning decisions. *Oyster Bay*, 166 F.3d at 493.

The Act added three provisions of law at issue in this case. The first and second provisions provide:

The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(I) & (II) (Supp. III). AirTouch's first two claims under the Act are (1) that the City Council unreasonably discriminated against it by granting Nextel the right to have a cellular communications station on top of the Fletcher Hills water tower and (2) that the City's decision has the effect of prohibiting personal wireless services.

AirTouch's third claim under the Telecommunications Act arises under the following provision:

Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii) (Supp. III 1997).

■ A claim under § 332(c)(7)(B)(iii) is reviewed under the substantial evidence standard. In contrast, in a claim under § 332(c)(7)(B)(i)(I) or (II), there is no deference to local findings. *See Cellular Tel. Co. v. Zoning Bd. of Adjustment of Ho-*

*Ho–Kus,* 197 F.3d 64, 71 (3d Cir.1999). The administrative record is reviewed de novo. *See Town of Amherst, N.H. v. Omnipoint Communications Enter. Inc.,* 173 F.3d 9, 16 n. 7 (1st Cir.1999). Furthermore, in § 332(c)(7)(B)(iii) inquiries, the reviewing court may not go beyond the administrative record in making its decision. *Id.* However, in a claim alleging discrimination among carriers or prohibition of personal wireless services, outside evidence may be considered. *Id.*

## B. Plaintiff's Claims.

There are cross-motions for summary judgment pending on the First Claim for Relief under the Telecommunications Act of 1996.

### 1. Does Substantial Evidence Support the City Council's Decision?

Section 332(c)(7)(B)(iii) requires that the government's decision denying a request to construct personal wireless service facilities be in writing and be supported by substantial evidence. 47 U.S.C. § 332(c)(7)(B)(iii) (Supp. III 1997).

#### a. Legal Standard—Substantial Evidence

 "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ho–Ho–Kus,* 197 F.3d at 71 (quoting *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). Put another way, "[s]ubstantial evidence is more than a scintilla of evidence but less than a preponderance." *Scranton,* 36 F.Supp.2d at 228 (citation omitted). The court must review the entire record as a whole in making its determination, including all evidence unfavorable to the agency's position. *See Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Tp.,* 181 F.3d 403, 408 (3d Cir.1999); *Ho–Ho–Kus,* 197 F.3d at 71.

 The substantial evidence standard must be applied using common sense standards of reasonableness. The Court is not bound by the substantial evidence standard to accept as substantial evidence impossible, incredible, unfeasible, or implausible testimony, even if it was not refuted.

In this case, the Court finds from the review of the administrative record that there are very few, if any, factual disputes between the parties. AirTouch supports its application on the grounds that it needs an additional site for its telecommunications service and that this site is the best adapted at the least expense to applicant: some alternatives are potentially available but they would be more expensive to develop. Defendants essentially do not contest the applicant's prima facie case.

Defendants, on their side, raise issues of aesthetic concerns to the affected residents and some health and safety issues. As to these arguments, applicant offers suggestions for mitigation and assurances of conscientious management, and once again repeats the contention that on balance, the Defendants should find the ultimate "good" outweighs the identified detriments.

Because the Defendants' case is essentially unrefuted by Plaintiff, and because it appears to the Court to be "such evidence as a reasonable mind might accept as adequate to support a conclusion," the Court is comfortable with its ability to evaluate the substantiality of the evidence based upon a totality of the administrative record.

#### b. Burden of Proof

It is not settled whether the burden of proof is on the plaintiff or the defendant to demonstrate that the locality's decision was supported by substantial evidence. *See Oyster Bay,* 166 F.3d at 496–97 (discussing split among district courts on this issue). Several district courts have held that the party seeking to overturn the administrative decision, that is, the permit applicant, bears the burden of proof. *See, e.g., Sprint Spectrum v. Bd. of County Comm'rs of Jefferson County,* 59 F.Supp.2d 1101, 1104 (D.Colo.1999); *Cen-*

*tury Cellunet of Southern Mich., Inc. v. City of Ferrysburg*, 993 F.Supp. 1072, 1077 (W.D.Mich.1997). Others have held that the burden rests on the locality or government agency to support the decision. *See, e.g., Cellco Partnership v. Town Plan & Zoning Comm'n of Farmington*, 3 F.Supp.2d 178, 182 (D.Conn.1998); *Prime-Co Personal Communications v. Village of Fox Lake*, 26 F.Supp.2d 1052, 1064 (N.D.Ill.1998). The Court has been unable to locate any Ninth Circuit authority on this question.

In this case, both Plaintiff and City stipulate that City bears the burden of demonstrating that the City Council's decision is supported by substantial evidence. (*See* City Motion at 13; AirTouch Opp'n at 18.) The Court accepts that stipulation, and accordingly will assign the burden of proof in § 332(c)(7)(B)(iii) on the City.

### c. Analysis

AirTouch argues that as a matter of law there was no substantial evidence to support the City's decision because the record consists primarily of the "substantiated" testimony of residents whose testimony was based on their experiences with Nextel.

There is a split in authority, and no Ninth Circuit authority, on whether a telecommunications zoning decision can be based on constituent testimony alone. *Compare AT & T Wireless PCS v. City Council of Virginia Beach*, 155 F.3d 423, 430 (4th Cir.1998) (holding that it is proper for a legislature and its members to consider constituent testimony as "particularly compelling forms of evidence"); *with Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d at 496 (2nd Cir.1999) (finding that a "few generalized expressions of concern with 'aesthetics' cannot serve as substantial evidence"); *Hearing Zone Bd. of Pine Grove Tp.*, 181 F.3d at 409 (3rd Cir.1999) (same).

■ The Court agrees that a decision must be based on more than just residents' concern about neighborhood aesthetics. However, in this case, the City's decision

reached beyond that. For example, Resolution No. 77–99 mentions the difficulty of "assuring the residents of security and safety in their own homes," noting that this is also a "valid concern" of the City. (AR, Ex. 5 at 40.) This is a question of police power, not merely another "Not in My Backyard" complaint. As another example, the City relied on *AirTouch's* witness: "More importantly, one AirTouch representative testified that such facilities are more compatible to commercially zoned properties." (*Id.*) In addition to the testimony of witnesses both for and against the site, the record contains photographs of the proposed site, reports by the PC's Staff, news articles about the site, and a petition signed by 212 residents opposing the project. Finally, the residents' experiences with Nextel make their observations on noise, visual blight, etc., *more* rather than less credible or "substantiated" since they are based on personal experience and not on speculation.

Accordingly, the Court finds that the City as a matter of law has met its burden of proof in showing that "substantial evidence" supports the City's decision.

However, the Court's "conclusion that the [Council's] decision was based on substantial evidence does not immunize the decision from attack for violating the antidiscrimination and antiprohibition provisions of the Act." *Jefferson County*, 59 F.Supp.2d at 1109. Accordingly, the Court goes on to analyze those provisions.

### 2. Did the City Council "Unreasonably Discriminate" Against AirTouch?

■ As mentioned above, the Act prohibits the City from "unreasonab[ly] discriminat[ing] among providers of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(I) (Supp. III 1997). The City argues that any discrimination between Nextel and AirTouch was not "unreasonable" and in fact was supported for the reasons set forth in Resolution No. 77–99.

Here, on the one hand, AirTouch, in December 1998, applied to build a wireless cellular site on the very same water tower where Nextel, without any competing applications, had been granted permission to build a similar site in November 1997. *See Cellco*, 3 F.Supp.2d at 185 ("unequal treatment is generally established when a commission grants a competitor's application and denies a plaintiff's application"). Moreover, AirTouch's application was denied mostly on the complaints of neighbors, and many of the neighbors' concerns related to perceived problems with the Nextel facility. (For example, problems with workmen allegedly urinating at site, noise of workmen such as loud radio playing.)

On the other hand, the City denied AirTouch's application because of concerns that its facility would increase problems. The City mentioned concerns about "overintensification" of wireless communication facilities, an increase in "visitors" to the property, and a seven-fold increase in the number of antennas. (AR, Ex. 6 at 44.) *See Virginia Beach*, 155 F.3d at 427 (stating that denials of applications on the "traditional grounds such as character of the neighborhood and avoiding visual blight" may be reasonable within the meaning of § 332(c)(7)(B)(i)(I)).

In this case, the Court finds that the City did not discriminate against AirTouch at all, let alone unreasonably. While Nextel's prior application on the same site had previously been granted, the situation in the neighborhood had changed in the time between Nextel's application and AirTouch's. At the hearings on AirTouch's application, the residents expressed concern regarding the *increase* in antennas, adding *another* equipment structure, and an *increase* in visual blight and problems such as noise.

For these reasons, the Court finds that the City's decision did not discriminate against AirTouch; it merely reached a different conclusion based on different factors. The City has demonstrated the absence of a material issue of fact on this point.

### 3. Does the City's Decision Prohibit or Have the Effect of Prohibiting the Provision of Personal Wireless Services?

Section 332(c)(7)(B)(i)(II) mandates that, in regulating personal wireless service facilities, the government's decision may not "prohibit or have the effect of prohibiting the provision of wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II) (Supp. III 1997). AirTouch alleges that the City's denial will in effect prohibit it from providing personal wireless services because alternative sites leave "gaps" in its service or will be too costly to provide.

#### a. Gap In Coverage

AirTouch has presented evidence of a gap in coverage in its wireless services on the Fanita Drive–Highway 125 corridor from Navajo Drive to the Highway 52 Connector. (Tifft Decl. at ¶ 11.) AirTouch argues that if a decision leaves "significant gaps" in wireless services, § 332(c)(7)(B)(i)(II) has been violated. The City argues that a mere gap is not sufficient; there must be a general ban for that provision to apply.

AirTouch is supported by recent decisions of the Second and Third Circuit. *See Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 640–41 (2d Cir.1999) (holding that § 332(c)(7)(B)(i)(II) does not apply only to general bans and stating that prohibiting only general bans would (1) require a court to wait for a series of denied applications and (2) "lead to the untenable result that once personal wire services are available within the jurisdiction of a state or local government . . . the state or local government could deny any further applications with impunity"); *Ho–Ho–Kus*, 197 F.3d at 70 (3rd Cir.) (holding that "local zoning policies and decisions have the effect of prohibiting wireless services if they result in 'significant gaps' in the availability of wireless services"). The City's position

was adopted by the Fourth Circuit. *See Virginia Beach*, 155 F.3d at 428 (holding that § 332(c)(7)(B)(i)(II) applies only to "blanket prohibitions" and "general bans or policies" and not to individual zoning decisions).

The Court agrees with the weight of circuit authority that § 332(c)(7)(B)(i)(II) prohibits decisions which create "significant gaps" in addition to those which create a "general ban." However, this does not address the question of whether, as in this case, a decision which creates a "gap" in one cellular provider's service violates the section when other providers serve the area. In such a case,

> ... the relevant gap, if any, is a gap in the service available to remote users. Not all gaps in a particular provider's service will involve a gap in the service available to remote users. The provider's showing on this issue will thus have to include evidence that *the area the new facility will serve is not already served by another provider.*

*APT Pittsburgh Ltd. Partnership v. Penn Tp. Butler County of Penn.*, 196 F.3d 469, 480 (3d Cir.1999) (emphasis added).[2] The doctrine prohibiting "gaps" is designed to protect the users, not the carriers. *See Ho–Ho–Kus*, 197 F.3d at 70 ("we conclude that there is a 'gap' in personal wireless services when a remote user of those services is unable either to connect with the land-based national telephone network, or to maintain a connection capable of supporting a reasonably uninterrupted communication"). Since the area at issue in this case is already being served by other providers, the City's decision does not "have the effect of prohibiting the provision of personal wireless services." *See* 47 U.S.C. § 332(c)(7)(B)(i)(II) (Supp. III 1997).

**b. Alternatives**

■ In support of its argument that it has no reasonable alternatives, AirTouch relies largely on the declaration of William P. Tifft, Supervisor, RF Engineering for AirTouch. Tifft did not testify or provide evidence before any of the administrative bodies. Accordingly, the City argues that Tiff's declaration is inadmissible. However, the Court finds that on a § 332(c)(7)(B)(i)(II) claim, extrinsic evidence may be admitted and it will consider the Tifft Declaration. *See Amherst*, 173 F.3d at 16 n. 7.

Tifft describes options considered by AirTouch for facility locations, and states that AirTouch concluded after extensive research and testing that the Fletcher Hills water tank is "the only available alternative." (Tifft Decl. at ¶ 18.) He states that AirTouch has "significant gaps in coverage" which will be alleviated only if AirTouch is granted the opportunity to build on the water tower site. (*Id.* at ¶ 32.) However, AirTouch representatives testified at various points in the administrative hearings that they investigated several sites and rejected them. The grounds for rejection included finding a site to be too "complex" (AR, Ex. 1 at 22.), to require a "significantly higher monopole" or "large monopole" (*id.* at 23), or "difficult construction." (AR, Ex. 21 at 154; AR Ex. 49 at 585.) AirTouch representatives did *not* testify that the Fletcher Hills water tank site was the *only* available alternative, but in effect that the site was the only site with the best coverage for the least expense.

There is no prohibition of wireless services within the meaning of § 332(c)(7)(B)(i)(II) if the carrier's request is denied but the carrier may turn to alternative sites, even if those sites "may be less than optimal." *Jefferson County*, 59 F.Supp.2d at 1109–10 ("forcing [the carrier] to use lesser alternatives" does not constitute prohibition). As noted by the First Circuit:

> Ultimately, we are in the realm of trade-offs: on one side are the opportunit[ies]

2. The Court also noted that a provider denied the opportunity to build a wireless facility in an area already served by other carriers could still bring a discrimination claim under § 332(c)(7)(B)(i)(II). *APT Pittsburgh Ltd.*, 196 F.3d at 480 n. 8.

for the carrier to save costs, pay more to the town, and reduce the number of towers, on the other are more costs, more towers, but possibly less offensive sites and somewhat shorter towers. [The carrier] may think that even from an aesthetic standpoint, its solution is best. But subject to an outer limit, such choices are just what Congress has reserved to the town.

*Amherst*, 173 F.3d at 14–15. The *Amherst* court also stated that "[w]ere [the carrier's] existing proposal the only feasible plan, then prohibiting its plan might amount to prohibiting personal wireless services," but that was not the case. *Id.* at 14. The carrier has the "heavy" burden to show prohibition and must do so by "show[ing] from language or circumstances not *just* that this application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *Id.*

Here, AirTouch has tried to demonstrate that other sites are not reasonably available. (Tifft Decl. ¶¶ 11, 32.) However, as discussed above, AirTouch's own witnesses testified at the administrative hearings only that other sites would present challenges and be less than ideal. Those witnesses did not say that those sites were entirely unfeasible. (*See, e.g.*, AR at 21–22, 27–28.)

Accordingly, the Court finds that the City has met its burden of showing that no material issue of fact exists on this claim. The City's motion for summary judgment regarding this issue is therefore granted and AirTouch's is denied.

### 4. Conclusion

The Court hereby enters summary judgment in favor of the City and against AirTouch on the entirety of the First Claim for relief under the Telecommunications Act.

### V. Second Claim for Relief: Communications Act of 1934

█ AirTouch alleges in its second claim for relief that the City violated 47 U.S.C. § 332(c)(3)(A), which provides in relevant part that:

> ... no State or local government shall have any authority to regulate the entry of ... any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.

47 U.S.C. § 332(c)(3)(A) (Supp. III 1997). AirTouch argues that the City's denial of its application constitutes an "impermissible barrier to entry." (Compl. at ¶ 43.)

However, as discussed above, 47 U.S.C. § 332(c)(7)(A) of the Telecommunications Act mandates that:

> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

47 U.S.C. § 332(c)(7)(A) (Supp. III 1997). Thus, AirTouch's argument:

> ... would imply that federal law bars any rejection by local government of a wireless communications provider's application for a zoning variance. This is contrary to the [Telecommunications Act], which expressly preserves city and state zoning authority.

*Sprint Spectrum L.P. v. Medina*, 924 F.Supp. 1036, 1040 (W.D.Wash.1996). The City's decision in Resolution No. 77–99 does not "regulate the entry" of AirTouch within the meaning of § 332(c)(3)(A).

Defendants' Motion for Summary Judgment on the Second Claim for Relief is therefore granted.

### VI. Third Claim for Relief: Federal Preemption by the Communications Act of 1934 and the FCC Regulatory Scheme

█ AirTouch alleges in its third claim for relief that the City's actions in denying AirTouch the CUP were in violation of, and preempted by, 47 U.S.C. §§ 151, 303,

and 332(a). Section 151 creates the Federal Commerce Commission ("FCC") and provides in part that the FCC shall "... make available ... a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges...." 47 U.S.C. § 151 (1994). Section 303 vests the FCC with certain powers and duties including the right to make regulations. 47 U.S.C. § 303 (1994). Section 332(a) provides that the FCC shall consider a variety of enumerated factors in regulating mobile services. 47 U.S.C. § 332(a) (Supp. III 1994).

AirTouch argues that the CUP denial "frustrates the establishment of a nation-wide cellular service network as intended by the Communications Act and the FCC rules ... because it effectively prohibits, unreasonably restricts and improperly interferes with the installation of a cellular communication facility...." (Complaint at ¶ 48.) In support of its argument it cites two cases: *360 Communications Co. v. Bd. of Supervisors of Albembarle Co.*, 50 F.Supp.2d 551 (W.D.Va.1999) and *Paging Inc. v. Bd. of Zoning Appeals for County of Montgomery*, 957 F.Supp. 805 (W.D.Va. 1997). However, both of these cases find preemption only because local zoning authorities acted in such a way as to violate provisions of the Telecommunications Act. *See 360 Communications Co.*, 50 F.Supp.2d at 562 (holding that in the "limited circumstances" when local zoning authorities' actions prohibit personal wireless service, the Act preempts local zoning law); *Paging, Inc.*, 957 F.Supp. at 808 (noting that under "limited circumstances" such as when the zoning authority violated § 332(c)(7)(B)(i)(II), "the federal interest in wireless communication takes priority over state zoning authority"). Moreover, ... it is clear that the [Telecommunications Act] was not intended to completely preempt the authority of local governments to regulate, to some extent, the placement and construction of cellular towers. Historically, local development and zoning powers have yielded to federal interests, via the Supremacy Clause ... Here there is no express preemption

and no pervasive regulatory scheme (as to facility location and characteristics); nor can it be fairly argued that compliance with both federal and state law is an impossibility.

*AT & T Wireless Serv. of Fla. v. Orange County*, 982 F.Supp. 856, 861 (M.D.Fla. 1997).

Here, as the Court held above, Defendants have shown that the City did not violate any provision of the Telecommunications Act. The City's actions were not preempted by federal law; rather, they were in accord with federal law. Thus, the City's Motion for Summary Judgment on the Third Claim for Relief is granted.

## VII. Fourth Claim for Relief: Unconstitutional Denial of Substantive Due Process and Equal Protection

Next, the City moves to dismiss AirTouch's Fourth Claim for Relief for denial of substantive due process and equal protection.

### A. Equal Protection

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Shaw v. Reno*, 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). "The guarantee of equal protection [under the Fifth Amendment] is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (citations omitted).

AirTouch argues the City violated the Equal Protection Clause by treating it differently than Nextel by granting Nextel's application and denying AirTouch's. It argues that AirTouch and Nextel are similar-

ly situated. However, generally, "as long as the lawmakers have a 'rational basis' for creating a classification, and the classification does not affect a 'suspect class,' the law passes the equal protection test." *Watson v. Proctor*, 161 F.3d 593 (9th Cir. 1998).

AirTouch has failed to show, and indeed it does not argue, that it is a member of a suspect class. Therefore, the City need only show that there was a rational basis for its treatment of AirTouch. The Court finds that the City has offered ample proof to show that its decision had a rational basis. Its treatment of AirTouch may have led to a different result than its treatment of Nextel, but the circumstances were different when Nextel's application was granted in 1997 and AirTouch's was denied two years later in 1999. The two applications were not on file at the same time and they never competed with each other. As discussed above in section IV. B.2, the City was concerned that AirTouch's presence would *increase* existing problems at the site as well as present new difficulties.

Accordingly, the City is entitled to summary judgment in its favor on AirTouch's equal protection claim.

## B. Substantive Due Process

■ Similarly, AirTouch argues that the City has violated its substantive due process rights by denying its CUP in a manner that "was unfair, arbitrary and capricious, and lacking in a rational basis." (Compl. at ¶ 53.) To plead a substantive due process violation, the plaintiff must show that the defendant's actions were " 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' " *Tyson v. City of Sunnyvale*, 920 F.Supp. 1054, 1062 (N.D.Cal.1996) (quoting *Sinaloa Lake Owners Ass'n v. Simi Valley*, 882 F.2d 1398, 1407 (9th Cir.1989)). " 'In zoning dispute cases, the principle of substantive due process assures property owners of the right to be free from arbitrary or irrational zoning decisions.' " *Id.* (quoting *Arroyo Vista Partners v. County*

*of Santa Barbara*, 732 F.Supp. 1046, 1053 (C.D.Cal.1990)). Moreover, a substantive due process violation may occur if the zoning authorities are "motivated by 'bias, bad faith, improper motive, racial animus, or the existence of partisan political or personal reasons.' " *Omnipoint Communications v. Penn Forest Tp.*, 42 F.Supp.2d 493 (M.D.Pa.1999) (citation omitted).

In the instant case, AirTouch does not allege, or offer evidence which would suggest, that any member of the City Council acted with improper motive or animus. AirTouch does argue that the City's decision was arbitrary and capricious. However, as discussed above, substantial evidence in the record supports the City's decision. The record as a whole, including the transcript of the May 25, 1999 hearing before the City Council, reveals that the City acted with careful consideration.

Accordingly, the City's Motion for Summary Judgment on Plaintiff's Fourth Claim for Relief is granted.

## VIII. Fifth Claim for Relief: Taking of Private Property Without Just Compensation

Plaintiff's fifth claim for relief arises under the Fifth and Fourteenth Amendments: AirTouch alleges the taking of private property without just compensation. AirTouch argues that it purchased FCC licenses and thus has the lawful right to access certain radio bands. (Compl. at ¶ 57.) It alleges that the City has denied it "all economically viable uses of its FCC license within the City by prohibiting AirTouch from obtaining a site needed to establish coverage for that area." (*Id.* at ¶ 58.)

■ There is no doubt that the Fifth Amendment disallows the taking of private property without just compensation. *Moore v. Costa Mesa*, 886 F.2d 260, 262 (9th Cir.1989). Nevertheless, "a regulation that adversely affects property values does not constitute a taking unless it destroys a major portion of the property's value." *Id.*

AirTouch and the City disagree on whether an FCC license constitutes property within the meaning of the Fifth Amendment. AirTouch relies upon *MLQ Investors, L.P. v. Pacific Quadracasting, Inc.*, 146 F.3d 746, 749 (9th Cir.1998), to argue that its FCC license is property in reference to the Fifth Amendment. Conversely, the City argues that the issuance of a license by the FCC does not create property which would be subject to the Fifth Amendment, citing to *In re Ridgely Communications, Inc.*, 139 B.R. 374, 379 (Bankr.D.Md.1992).

■■■ The Court finds neither of these cases to be precisely on point. However, the Court declines to decide this apparently unsettled question, because even if Plaintiff's FCC license were to be considered property for the purposes of the Fifth Amendment, the City has not destroyed "a major portion" of the license's value. *Moore v. City of Costa Mesa*, 886 F.2d at 262. Plaintiff has two other wireless communication towers within the City (AR, Ex. 1 at 23), Plaintiff has rejected a site because it would be too "complex" to build upon (AR, Ex. 1 at 22), and Plaintiff's own witnesses have not testified that other sites would be entirely unavailable (*See, e.g.*, AR at 21–22, 27–28). In other words, Plaintiff's FCC license is being used within the City through the two existing towers, and may well be used more if Plaintiff applies at additional sites. Plaintiff has not proven to the satisfaction of this Court that the value of its FCC license has decreased. *See United States v. 429.59 Acres of Land*, 612 F.2d 459, 462 (9th Cir.1980) (holding that in condemnation proceedings, the landowner has the burden of establishing the value of the property).

For these reasons, the Court grants the City's motion for summary judgment on the fifth claim for relief.

### IX. Sixth Claim for Relief: Violation of the Civil Rights Act, 42 U.S.C. § 1983 et seq.

The parties each seek summary judgment on AirTouch's Sixth Claim for Relief under the Civil Rights Act, 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1994).

■■■■ Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal citations omitted); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.1991). Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

AirTouch argues that the City violated section 1983 by depriving AirTouch of its rights under the Telecommunications Act. However, as discussed above, the City has not violated the legal rights of AirTouch under that Act. Thus, the City has shown that there is no material issue of fact on this claim for relief because the second prong of the *Parratt* test has not been met. That is, AirTouch has failed to show that the City's conduct deprived it of some right, privilege, or immunity protected by the Constitution or laws of the United

States. Accordingly, the City's motion for summary judgment on the Sixth Claim for Relief is granted and AirTouch's motion for summary judgment is denied.

### X. Seventh and Eighth Claims for Relief: Administrative Mandamus and Declaratory Relief

AirTouch also seeks a mandamus under state law and declaratory relief. However, these claims are moot in view of the Court's ruling above. *See, e.g., Bodinson Mfg. Co. v. Cal. Employment Comm'n,* 17 Cal.2d 321, 109 P.2d 935, 940 (1941) (noting that mandamus "will be used to correct acts and decisions of administrative agencies which are in violation of the law, where no other adequate remedy is provided"). Accordingly, Plaintiff's seventh and eighth claims for relief are denied with prejudice.

### XI. Conclusion

For all of the foregoing reasons, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for Summary Judgment and/or for Summary Adjudication is **GRANTED** in its entirety; and

(2) Plaintiff's Motion for Summary Judgment re: First and Sixth Claims for Relief is **DENIED.**

Judgment is entered in favor of the Defendants and against Plaintiff.

**IT IS SO ORDERED.**