**SPRINT SPECTRUM L.P.,** Plaintiff,

v.

The **BOARD OF ZONING APPEALS OF the TOWN OF BROOKHAVEN,** Defendant.

No. 01–CV–4508(ADS)(ETB).

United States District Court, E.D. New York.

Feb. 5, 2003.

Munley, Meade, Nielsen & Re, by Denise Wagner, Esq., Of Counsel, Huntington, NY, for Plaintiff.

Town Attorney of Brookhaven, by Assistant Town Attorney Barbara M. Wiplush, Medford, NY, for Defendant.

Michael Kaufman, Esq., St. James, NY, Amicus Curiae on behalf of the Residents of Sage Brush Court, Setauket, NY.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this case, the plaintiff Sprint Spectrum L.P. ("Sprint" or the "plaintiff") alleges that the Board of Zoning Appeals of the Town of Brookhaven (the "BZA" or the "defendant") denied its request for a special use permit to build a 60–foot monopole in East Setauket located in the Town of Brookhaven, New York (the "Town"), in violation of the Telecommunications Act of 1996 (the "TCA"), 47 U.S.C. § 332(c). Presently before the Court are Sprint's motion for partial summary judgment and the BZA's cross-motion for partial summary judgment.

## I. BACKGROUND

The facts are taken from the pleadings, affidavits and exhibits submitted in support of the parties' respective motions. Sprint provides, among other things, personal wireless telephone services to its customers. Pursuant to the rules and regulations of the Federal Communications Commission (the "FCC"), Sprint is licensed to construct, maintain and operate a personal communications service in the New York metropolitan area, including Suffolk County.

To provide wireless service, Sprint has created an interconnected series of "cell sites" which overlap in a grid-like pattern. The cell sites contain radio antennas installed on a structure, such as a tower or monopole and attached equipment which send and receive radio signals to and from customers' portable wireless handsets and mobile telephones. The antennas feed low power radio signals from wireless telephones through the attached equipment and into ordinary telephone lines so calls can be routed anywhere in the world. To receive adequate telephone service, a cus-

tomer must be a short distance from one of the cell sites. When the cell sites are located too far apart, customers may experience inadequate service, including disconnection of calls, static and difficulty placing calls.

Sprint identified a significant service "gap" for its customers in East Setauket. To fill that gap, Sprint claims that it must build a monopole or tower in the "gap" area because the structures in that area were not high enough. Sprint found a site to build a monopole on the west side of South Jersey Avenue in East Setauket which was zoned "J–2 Business"—a location where a communications tower may be located in the Town.

Pursuant to the Brookhaven Town Code (the "Code"), a carrier may construct a communications tower in various zoning districts, including among others, J–2 Business zones, provide that the BZA issues to the carrier a special use permit. The Code provides guidelines for the construction of wireless communications towers and antennas. In that regard, the BZA provides:

> [G]eneral guidelines for the siting of wireless communications towers and antennas in order to: (1) protect residential areas and land uses from potential adverse impacts of towers and antennas; (2) encourage the location of towers in non-residential areas; (3) minimize the total number of towers throughout the Town; (4) encourage the joint use of new and existing tower sites as a primary option rather than construction of additional single-use towers; (5) encourage users of towers and antennas to locate them, to the extent possible, in areas where the adverse impact on the surrounding community is minimal; (6) encourage users of towers and antennas to configure them in a way that minimizes the adverse visual impacts of the

towers and antennas through careful design, siting, landscape screening, and innovative camouflaging techniques; (7) enhance the ability of the providers of telecommunications services to provide such services to the community quickly, effectively, and efficiently; (8) consider the impacts upon the public health and safety of communication towers; and (9) avoid potential damage to adjacent and/or nearby properties from tower failure through appropriate engineering and careful siting of tower structures and/or facilities.

Code § 85–452. Further, the Code requires that new towers be set back from any adjoining lot line a distance equal to at least 150% of the height of the tower, although the BZA in its discretion may reduce the setback requirement to 75%, if "the goals of the local law would be better served thereby." *Id.* § 85–457(B)(4)(a), (c).

On December 20, 2000, Sprint submitted an application to the Town's Building Inspector for a building permit allowing the construction of a 120–foot monopole, camouflaged as a flagpole. That application was denied. Sprint then filed an application with the BZA seeking a special use permit and in May 2001 a public hearing on the permit application was held. Prior to the hearing, Sprint redesigned its proposed cell site by reducing the height of the monopole from 120 to 60 feet and located the necessary ancillary equipment inside a building instead of on the monopole.

At the hearing, Sprint had an architect, a planning consultant, a radio frequency engineer, a safety expert and a real estate appraiser testify in support of the application. The architect described the equipment involved in the proposed building plan. The planning consultant testified that the proposed structure would not

have an adverse impact on the aesthetics of the area. The radio frequency engineer testified that Sprint had a cellular phone coverage gap in the proposed site area and therefore had a need for the new cell site. The safety expert testified that the proposed site would comply with the FCC standards for radio frequency emissions. The real estate appraiser testified that the monopole would not negatively affect the existing property value in the area.

In opposition to the application, a planning consultant, a real estate appraiser, local legislators, a representative from the Setauket Civic Associations and a number of residents testified. Their testimony focused predominately on the negative aesthetic impact of the proposed monopole, its incompatibility with the historic character of the area and alternative options available to Sprint.

In a written decision dated June 13, 2001, the BZA denied the application based on the following conclusions:

A .... that the granting of the special permit will impair the value of and have an adverse impact on neighboring residential properties. The proposed monopole will be in close proximity to residences and would be the tallest structure in the East Setauket community.

B .... that other wireless communications carriers are currently providing service to the area of the subject premises. Moreover, the roaming feature of the applicant allows a customer to still obtain wireless services in the 'gap' area. Therefore, any gap in service is entirely limited to the applicant. Thus, the denial of this application will not have the effect of prohibiting wireless services in the East Setauket area.

C .... that the proposed monopole will have a negative visual impact on the aesthetics of the East Setauket community. The testimony and evidence submitted clearly demonstrated that the subject premises is located between the East Setauket and Old Setauket historic district transition zones where the majority of the buildings are one-story with colonial facades. Thus, a 60–foot monopole will adversely impact this area.

D. [t]hat since the proposed monopole would operate below the required Federal Communication Commission guidelines, the Board of Zoning Appeals is preempted from addressing the health or environmental effects of radio frequency emissions.

*In Re Sprint Spectrum, L.P.*, BZA Conclusions at 6 (June 13, 2001).

On July 6, 2001, Sprint filed the instant complaint against the BZA. The complaint asserts six claims. The first claim alleges that the BZA's denial of Sprint's application was not supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B). The second claim alleges that the BZA discriminated against Sprint because it prevented Sprint from competing in the East Setauket area. The third claim alleges that the BZA's denial of the application violated Sprint's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. The fourth claim alleges that the BZA's denial violated the "Takings Clause" of the Fifth Amendment to the United States Constitution and Article 1, Section 7 to the New York State Constitution. The fifth claim alleges that the BZA's denial of the application without substantial evidence under the TCA violated 42 U.S.C. § 1983. The sixth claim seeks to set aside the BZA's denial of the application pursuant to Article 78 of the New York State Civil Practice Law and Rules.

Sprint now moves for partial summary judgment on the first, second and fifth

claims. The BZA cross-moves for partial summary judgment on the same claims. In opposition to Sprint's motion, Michael Kaufman, Esq. filed an *amicus curiae* brief on behalf of the residents of Sage Brush Court, the adjacent neighborhood to the proposed site.

## II. DISCUSSION

### A. The Standard for Summary Judgment

Summary judgment must "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the party moving for summary judgment to establish the absence of any genuine issues of material fact, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any ambiguities must be resolved in favor of the non-movant, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotation marks and citations omitted). Lastly, the existence of disputed facts that are not material to the issues at hand may not defeat summary judgment. *Id.*

"As to materiality, the substantive law will identify which facts are material." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

"[T]he trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to decid[e] them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. The Telecommunications Act of 1996

Congress enacted the TCA " 'to provide a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services ... by opening all telecommunications markets to competition....' " *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 492–93 (2d Cir.1999) (quoting H.R. Conf. Rep. No. 104–458, at 206 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 124). Congress enacted procedures to regulate the construction of wireless facilities, including communica-

tions towers. 47 U.S.C. § 332. Section 332 provides judicial review of any local decision which denies a request to place, construct or modify wireless service facilities. *Id.* § 332(c)(7)(B)(v). In particular, the party adversely affected may commence an action within 30 days of the adverse determination in any court of competent jurisdiction. *Id.*

Section 332 balances the goal of encouraging the growth of telecommunications systems and the right of local governments to make decisions involving land use. Section 332 accomplishes that goal by requiring local governments to act on any request for authorization to construct personal wireless service facilities "within a reasonable period of time...." *Id.* § 332(c)(7)(B)(ii). In addition, Section 332 prevents local governments, regulating "the placement, construction, and modification of personal wireless service facilities", from: (1) unreasonably discriminating among providers of functionally equivalent services; and (2) prohibiting or having the effect of prohibiting the provision of personal wireless services. *Id.* § 332(c)(7)(B)(i)(I) and (II).

Congress and courts recognize local governments' legitimate interest in determining the placement of wireless facilities. For example, the Second Circuit determined that the goals of increasing competition and "rapid deployment of new technology" do not "trump all other important considerations, including the preservation of the autonomy of states and municipalities." *Sprint Spectrum, L.P. v. Willoth,* 176 F.3d 630, 639 (2d Cir.1999). "In the context of constructing a national wireless telecommunications infrastructure, Congress chose to preserve all local zoning authority 'over decisions regarding the placement, construction, and modification of personal wireless service facilities,' 47 U.S.C. § 332(c)(7)(A), subject only to the limitations set forth in section 332(c)(7)(B)." *Willoth,* 176 F.3d at 639–40. The legislative history of the TCA also provides that Section 332 "preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances" specified in that section. Sen. Rep. No. 104–230, at 458 (1996).

## C. The Substantial Evidence Claim

■ The TCA establishes procedural requirements that must be met when evaluating an application to construct a wireless facility. For example, the denial of a request to construct a wireless facility must be "in writing and supported by substantial evidence" in the record. 47 U.S.C. § 332(c)(7)(B)(iii). Courts review a denial under the TCA using the traditional standard for judicial review of agency decisions. *Cellular Tel. Co.,* 166 F.3d at 494. Under that standard, courts may neither "engage in [their] own fact-finding nor supplant the [local board's] reasonable determinations." *Id.* Substantial evidence denotes less than a preponderance of evidence, but more than a scintilla of evidence. *Id.* " 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Universal Camera v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Courts must review the record "in its entirety, including evidence opposed" to the zoning decision. *Id.* In addition, "local and state zoning laws govern the weight to be given the evidence," and "the TCA does not affect or encroach upon the substantive standards to be applied under established principles of state and local law." *Id.* (internal quotation marks and citation omitted).

Under New York law, cellular telephone companies are classified as public utilities for purposes of zoning applications. *Id.*

(citing *Cellular Tel. Co. v. Rosenberg*, 82 N.Y.2d 364, 371, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993)). Therefore, a local board must evaluate a cellular telephone company's application for a variance on the basis of whether the public utility has shown a need for its facilities and whether the needs of the broader public would be served by granting the variance. *Rosenberg*, 82 N.Y.2d at 371–72, 604 N.Y.S.2d 895, 624 N.E.2d 990 (citing *Consol. Edison Co. v. Hoffman*, 43 N.Y.2d 598, 611, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978)).

Sprint argues that the BZA's denial of its application for a special use permit was not supported by substantial evidence on the stated grounds of aesthetics and impairment of property values. In response, the BZA contends that its determination was supported by substantial evidence on the grounds of aesthetics, impairment of property value and Sprint's failure to comply with the Town's set back requirement.

### 1. Aesthetics

■ In New York, a local board may deny an application under the TCA on the basis of aesthetics. *Cellular Tel. Co.*, 166 F.3d at 495 (citing *Suffolk Outdoor Advertising v. Hulse*, 43 N.Y.2d 483, 490, 402 N.Y.S.2d 368, 373 N.E.2d 263 (1977)). In general, courts need not "look far beyond [a local board's] citing of aesthetics to find a valid basis for a local zoning decision . . . under the TCA." *Id.* On the other hand, courts "can find that aesthetics qualify as a permissible ground for denial of a permit only if . . . there was 'more that a mere scintilla' of evidence before the [local board] on the negative visual impact." *Id.* (quoting *Universal Camera*, 340 U.S. at 477, 71 S.Ct. 456, 95 L.Ed. 456).

A review of the record reveals that there was substantial evidence to support the BZA's conclusion that the proposed monopole would have a negative impact on aesthetics in the East Setauket community. First, the record indicates that the proposed monopole would be located in close proximity to historical surroundings, namely, 550 feet south of the historic Route 25A with a portion of the proposed site's property located within the Old Setauket Historic District Transition Zone.

Second, the record contains testimony from legislators, residents, members of civic and historical organizations and a real estate appraiser relating that the proposed monopole is incompatible with the surrounding area's historic nature and appearance. For example, one legislator submitted a letter noting the proposed monopole's adverse affect on preserving the historic nature of Route 25A, as the main street in East Setauket. Another legislator submitted a letter noting the incompatibility of the proposed monopole due to its close proximity to the Old Setauket Historic District Transition Zone. A real estate appraiser, familiar with the proposed site area, testified that all the commercial structures in that area have a colonial style facade and noted the proposed monopole's lack of harmony with that area. Residents also testified that the monopole was incompatible with the historic nature of their community.

Third, the record contains testimony that certain residents would have a view of the proposed monopole, especially during the winter months when there are no leaves on the trees. In addition, the Elkowitz Report, a visual analysis report which Sprint submitted in support of its application, acknowledged that certain residents would have a view of the proposed monopole from their neighborhoods.

In *Cellular Tel. Co.*, 166 F.3d at 490, the Second Circuit found that the general statements of only a few residents who expressed their concern with aesthetics and their uninformed speculation on the

visual nature of the proposed monopole did not constitute substantial evidence. *Id.* at 496. Unlike the facts in *Cellular Tel. Co.,* the record in this case contains specific and informed statements on the historical nature of the area and the incompatibility of the proposed monopole, even camouflaged as a flagpole, to the historic surrounding area. *See SiteTech Group Ltd. v. Bd. of Zoning Appeals of Town of Brookhaven,* 140 F.Supp.2d 255, 262 (E.D.N.Y.2001) (noting the sufficiency of the informed testimony by residents, members of civic, historical and senior citizen organizations on the historic and colonial appearance of Route 25A and the proposed monopole's incompatibility with that area).

Sprint's reliance on *Omnipoint Comms. Inc. v. City of White Plains,* 175 F.Supp.2d 697 (S.D.N.Y.2001) is misplaced. In *Omnipoint,* Judge Colleen McMahon of the Southern District of New York found that aesthetics was not a valid basis for the local board to reject a service provider's application to build a monopole on premises owned by a golf course. *Id.* at 716–17. In that regard, she found that the local board improperly rejected the service provider's detailed report of the visual impact of the proposed monopole without any basis and then credited its own expert's report which contained unreliable data. *Id.* at 716. She also found that local residents' fears were unsupported. *Id.*

Unlike the facts in *Omnipoint,* in this case, the BZA had a proper basis to reject Sprint's visual analysis report because its photographs did not reflect the winter months when residents would have a clearer view of the proposed monopole. Also, the BZA had a sufficient basis to credit the informed testimony and statements of its legislators, residents, members of civic and historical organizations and real estate appraiser, who noted that the proposed monopole was incompatible with the surrounding area's historic nature and appearance. Furthermore, the BZA recognized that a number of residents would have a view of the proposed monopole while in *Omnipoint* only one neighboring house would see the monopole. 175 F.Supp.2d at 703.

Finally, camouflaging the proposed monopole as a flagpole does not overcome the finding of substantial evidence. Contrary to Sprint's argument, the proposed monopole is not a flagpole; it would be much wider in diameter and would contain equipment not found on a flagpole. Also, in this Court's view, it is reasonable for many residents to find camouflaging a monopole as a flagpole flying an American flag to be offensive, as the Town planning consultant found.

For the above-noted reasons, the BZA had substantial evidence to support its conclusion that the proposed monopole would have a negative impact on the aesthetics in the East Setauket community. Because the Court finds that aesthetics provided a valid basis to deny the application, the Court need not address whether the BZA's denial of the special use permit on the grounds of impairment of property value and failure to comply with the Town's set back requirement were supported by substantial evidence. Nevertheless, to complete the record, the Court will address both grounds.

## 2. The Impairment of Property Value

 The residents' and brokers' conclusory assertions that property values will decrease do not amount to substantial evidence. *Cellular Tel. Co.,* 166 F.3d at 496. A review of the record reveals that the BZA's conclusion that the proposed monopole would have a negative impact on the value of neighboring residential properties was not supported by substantial evidence.

First, the BZA based its conclusion partly on its real estate appraiser's conclusory statements and unsupported studies. For example, the Town's real estate appraiser based her opinion that the neighboring homes would suffer a negative impact on two separate studies of areas located within two miles of the proposed monopole. One study involved homes adjacent to railroad tracks and another involved homes located next to auxiliary power lines. Without any other comparisons, she then concluded that four homes next to the proposed monopole would be negatively impacted between ten and fifteen percent by the proposed monopole. She provided no legitimate basis or explanation as to how she arrived at this ten to fifteen percent figure. As such, her studies provided no support for her opinion and thus her testimony was insufficient to establish substantial evidence. *See Cellular Tel. Co.*, 166 F.3d at 496 (finding broker's unsupported affidavit insufficient to establish substantial evidence).

Second, the BZA based it conclusion partly on the testimony of certain residents who believed that their property value would be decreased due to the proposed monopole. Those few residents' generalized speculative conclusions that their property values would decrease, without more, was insufficient to establish substantial evidence. *See Cellular Tel. Co.*, 166 F.3d at 496 (finding that a few generalized concerns on the potential harm to property values is insufficient to establish substantial evidence).

Third, the Town, for the most part, did not discredit Sprint's real estate appraiser who testified that the proposed monopole would not negatively affect the existing property value in the area. That real estate appraiser based his conclusion on two studies, one involving the sale of homes before and after the installation of a 100 foot flagpole in Baldwin, and another involving the sale of homes near Syosset and Woodbury involving a 300 foot tower. Although the Town's real estate appraiser challenged the value of the first study on the ground that it was not a good comparison to the instant case because the location of the flagpole in Baldwin was more significantly developed commercially than East Setuaket, the Town presented no evidence to challenge the second study.

### 3. The Set Back Requirement

The Code requires that new towers be set back from any adjoining lot line a distance equal to at least 150% of the height of the tower, although the BZA in its discretion may reduce the setback requirement to 75%, if "the goals of the local law would be better served thereby." Code § 85–457(B)(4)(a), (c). Sprint concedes that the proposed monopole would be set back 125% from the nearest adjoining lot. The proposed monopole would also be within six feet of customer parking and within approximately thirty-one feet of an office complex building. As such, the BZA had substantial evidence to deny the application on the basis of the failure to comply with the set back requirements. *See SiteTech Group Ltd.*, 140 F.Supp.2d at 263 (noting that the BZA had substantial evidence to deny an application under the TCA where the proposed monopole was set back 75%, not 150% or more).

Sprint argues that the Court should not consider whether its failure to comply with the set back requirement established substantial evidence because the BZA did not rely on this ground in denying its application. The Court disagrees. In its findings of fact, the BZA noted that the proposed monopole only satisfied the 75% set back requirement and that the BZA found the proposed site was a potential hazard to the

public. Accordingly, the Court finds that the BZA properly raised this ground.

In sum, the BZA had substantial evidence under the provisions of the TCA to deny Sprint's application on the grounds of aesthetics and failure to comply with the set back requirement. As such, Sprint's motion for partial summary judgment on the first claim alleging that the BZA's denial was not supported by substantial evidence under the TCA is denied and the BZA's motion for partial summary judgment is granted dismissing that claim.

### C. The Unreasonable Discrimination Claim

■ Sprint argues that the BZA unreasonably discriminated against it by denying its application in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I). In response, the BZA contends that there is no evidence that the BZA treated one of Sprint's competitors differently in connection with an application for the construction of a telecommunications tower.

In order to prevail under Section 332(c)(7)(B)(i)(I), the plaintiff "must show that defendants discriminated among providers of functionally equivalent services and that these providers were treated unequally." *Omnipoint Comms., Inc.*, 175 F.Supp.2d at 717. On the other hand, "[t]he [TCA] explicitly contemplates that some discrimination among providers of functionally equivalent services is allowed. Any discrimination need only be reasonable." *Willoth*, 176 F.3d at 638 (quoting *AT & T Wireless PCS, Inc. v. City Council of Va. Beach*, 155 F.3d 423, 427 (4th Cir. 1998)). Pursuant to the TCA, a local board may reasonably consider the location of the cell tower when deciding the nature of the inquiry to be made and whether to approve the application for construction. *Id.* at 639.

In this case, the record contains no evidence that the BZA treated other competitors differently than Sprint. There is no evidence that the BZA allowed one of Sprint's competitors to build a monopole in the same proposed site area. In addition, the record indicates that Sprint's competitors have existing facilities which service East Setauket on Mud Road and Hulse Road; two sites that Sprint stated it intended to establish wireless facilities.

In short, Sprint has presented no evidence to support its conclusory claim of unreasonable discrimination under the provisions of the TCA. Accordingly, Sprint's motion for partial summary judgment on the second claim alleging that the BZA's denial unreasonably discriminated against Sprint under the TCA is denied and the BZA's motion for partial summary judgment dismissing that claim is granted.

### D. The Section 1983 Claim

Sprint brings a Section 1983 claim based on a violation of the TCA. Because the Court finds that there is no violation of the TCA, the BZA's motion for partial summary judgment dismissing that claim is granted.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that Sprint's motion for partial summary judgment on the first claim alleging that the BZA's denial was not supported by substantial evidence under the TCA is denied and the BZA's motion for partial summary judgment dismissing that claim is granted; and it is further

**ORDERED,** that Sprint's motion for partial summary judgment on the second claim alleging that the BZA's denial unreasonably discriminated against Sprint under the TCA is denied and the BZA's motion

for partial summary judgment dismissing that claim is granted; and it is further

**ORDERED,** that Sprint's motion for partial summary judgment on the fifth claim alleging a cause of action under Section 1983 based on a violation of the TCA is denied and the BZA's motion for partial summary judgment dismissing that claim is granted; and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge E. Thomas Boyle forthwith to schedule the expedited completion of discovery.

**SO ORDERED.**