GRABER, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority that genuine issues of material fact remain with respect to whether the Board of Supervisors’ (Board) denial of MetroPCS’s application for a Conditional Usé Permit (CUP) to construct wireless facilities violated the anti-discrimination and anti-prohibition provisions of the Telecommunications Act of 1996(TCA), 47 U.S.C. §§ 151-615. I write separately because the Board’s determination that the proposed facilities are unnecessary, premised on the fact that at least one other service provider serves the same area, is irreconcilable with the anti-discrimination provision of the TCA, 47 U.S.C. § 332(c)(7)(B)(i)(II). In view of that inconsistency, the Board’s “necessity” finding cannot support its denial of Me-troPCS’s request even if substantial evidence supports that finding. I respectfully dissent from the majority’s conclusion to the contrary.
According to the majority, a reviewing court’s analysis of the reasons given by a zoning authority for denying a request to construct wireless facilities begins and ends with determining whether those reasons are authorized by local regulations and supported by evidence. Relying on the Second Circuit’s decision in Cellular Telephone Co. v. Town of Oyster Bay, the majority concludes that “the TCA ‘does not affect or encroach upon the substantive standards to be applied under established principles of state and local law.’ ” Maj. op. at 724 (emphasis in majority opinion) (quoting Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir.1999)). That is, the reasons stated by a zoning authority in denying a request for wireless facilities are irrelevant under the majority’s analysis. Accordingly, the majority concludes that the Board was entitled to reject MetroPCS’s application for a *738 CUP solely because “[n]othing in the record suggests that the area proximate to 5200 Geary Boulevard is not already served by at least one other wireless service provider.” See Maj. op. at 729-30 n. 6 (finding no error in the Board’s “necessity” rationale because “the TCA.is agnostic as to the substantive content of local regulations”).
The majority overstates the extent of the TCA’s indifference to the substantive content of local regulations when those regulations are applied to zoning decisions regarding the “placement, construction, and modification of personal wireless service facilities.” 47 U.S.C. § 332(c)(7)(B)(i). Oyster Bay tempered its statement regarding the TCA’s neutrality by observing that at least one provision of the TCA places a substantive limitation on the permissible bases to support a zoning authority’s denial of a request for the construction of wireless facilities: “We note ... that [47 U.S.C.] § 332(c)(7)(B)(iv)[1] bars denials based on environmental effects of rfes [radio frequency emissions,] if the applicant facility would comply with FCC standards .... ” Oyster Bay, 166 F.3d at 494 n. 2. Although health and safety are undeniably a proper subject,for local regulation, the TCA “ ‘prevents the denial of a permit on the sole basis that the facility would cause negative environmental effects.’ ” Id. at 495 (quoting Iowa Wireless Servs., L.P. v. City of Moline, 29 F.Supp.2d 915, 923 (C.D.Ill.1998)).
Similarly, “the anti-discrimination and anti-prohibition provisions of the TCA, [47 U.S.C. § 332(e)(7)(B)(i)(I), (II),] involve federal limitations on state authority.” S.W. Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 58 (1st Cir.2001) (internal quotation marks omitted). Unlike the TCA’s provision.relating to radio frequency emissions, the anti-discrimination and anti-prohibition provisions do not expressly prohibit the consideration of specific grounds in zoning decisions regarding the construction of wireless facilities. Nonetheless, those provisions do limit the ways in which a state or local government may apply its zoning regulations to a request for the placement of wireless facilities. As Todd observed, a local zoning authority is “subject to several substantive and procedural limitations that ‘subject[local governments] to an outer limit’ upon their ability to regulate personal wireless services land use issues.” Id. at 57 (alteration in original) (quoting Town of Amherst v. Omnipoint Communications Enters., Inc., 173 F.3d 9, 15 (1st Cir.1999)); see also APT Pittsburgh Ltd. P’ship v. Penn Township Butler County of Pennsylvania, 196 F.3d 469, 473 (3d Cir.1999) (noting that the TCA “places several substantive and procedural limits upon [local zoning] authority when it is exercised in relation to personal wireless service facilities”).
For example, the Board could not deny MetroPCS’s application solely on the ground that the availability of wireless services in the Geary neighborhood may lead to increased wireless telephone usage among automobile drivers in that neighborhood, with a commensurate increase in traffic accidents. Traffic safety is certainly a legitimate zoning concern, and the Board could easily produce substantial evidence to support a correlation between wireless telephone usage among drivers and traffic accidents. Nonetheless, the *739 Board’s rationale for its decision would be entirely inconsistent with the TCA’s anti-prohibition provision, as carefully and correctly interpreted by the majority, because the Board would be seeking to preserve a significant coverage gap. Accordingly, a denial of permission to construct wireless facilities for that reason alone should not survive judicial scrutiny.
The Board’s necessity rationale presents the same problem. Whatever its consistency with local zoning ordinances,[2] the denial of MetroPCS’s request on the ground that the Geary neighborhood is already served by at least one other wireless service provider is irreconcilable with § 332(c)(7)(B)(i)(II)’s prohibition of zoning decisions that “unreasonably discriminate among providers of functionally equivalent services.” As explained in the House Conference Report, the chief purpose of the TCA is to “open[ ] all telecommunications markets to competition.” H.R. Conf. Rep. No. 104-458, at 1 (1996). The TCA’s anti-discrimination provision furthers that purpose by ensuring “that a State or local government does not in making a decision regarding the placement, construction, and modification of facilities of personal wireless services described in this section unreasonably favor one competitor over another.” Id. at 208 (emphasis added).
Here, the Board’s necessity determination results in precisely the type of unreasonable discrimination that the TCA seeks to prevent. It protects existing. service providers against potential competitors and effectively bars all new market entrants from the area in question. Because the Board’s necessity determination is inherently and unreasonably discriminatory, it cannot serve as a valid, legally, relevant basis for rejecting MetroPCS’s application for a CUP.
The majority misunderstands my point when it claims that ■ I argue “that any zoning regulation — or application of such a regulation — based on considerations of community ‘necessity’ by its terms discriminates against new providers.” Maj. op. at 724. Instead, I argue much more simply, and much more narrowly, that a local agency’s fact-finding about “necessity” must respect the statutorily required definition of what “necessity” is.
Neither the majority nor the district court looked further than the Board’s “necessity” rationale in holding that substantial evidence supported the Board’s decision as a whole. Because “[a] significant number of community members that opposed the installation indicated that they had adequate wireless services [from other providers] in their district,” the district court concluded that it “need not reach the question of whether there is substantial evidence supporting the Board’s determination that MetroPCS’s installation, would cause visual blight, or that MetroPCS did not need the antennas for its own service.” MetroPCS, Inc. v. City & County of San Francisco, 259 F.Supp.2d 1004, 1010-11 & n. 6 (N.D.Cal.2003). For the reasons discussed above, I disagree with the majority that the Board’s decision can rest on that ground alone, even if that ground is supported by substantial evidence. Accordingly, on remand, I would instruct the district court to consider whether substantial evidence supports the legally relevant and permissible reasons that the Board gave for denying MetroPCS’s request to construct wireless facilities.
*740 In all other respects, I concur m the majority’s opinion.

. 47 U.S.C. § 332(c)(7)(B)(iv) provides:
No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission’s regulations concerning such emissions.

. Pursuant to San Francisco Planning Code § 303(c)(1), the Board may consider whether a proposed development "is necessary or desirable for, and compatible with, the neighborhood or community.”